## VAUPELL *v.* WOODWARD.

Where the defence to a contract stated in a bill, is that it was not in writing, the answer must set up such defence as *a fact*, and put it in issue distinctly. When the answer admits the making of the agreement alleged in the bill, without asserting that it is not in writing and that it is therefore void by the statute of frauds, the defendant cannot object to the contract on that ground at the hearing.

Stating in the answer that the contract is void in law and that the defendant is not bound to perform the same, is not sufficient to enable him to avail himself of the statute of frauds, or to put the complainant on proof of a contract in writing.

A pledgee may file a bill to obtain a sale of the pledge for the payment of his demand. And although the demand be for unliquidated damages, it is not necessary to assess such damages at law before proceeding in equity for a sale.

On a sale of shares of stock in an incorporated company, deliverable at a future day, it is not necessary that the vendor, in order to recover damages on the refusal of the buyer to receive the stock, should immediately make a re-sale of the stock and an actual transfer of the same.

On such a sale, no tender of the stock is necessary in equity, when the purchaser, on the day it is to be completed, avows that he will not receive it.

Railway shares not within the English statute of frauds against parol contracts—*in note.*

September 16 ; 30, 1844.

THE complainant sold to the defendant, two hundred shares of the stock of an incorporated rail road company, at a stipulated price, deliverable at a future day, and to secure the performance of the contract, each party deposited 100 shares of similar stock with Dykers & Alstyne, brokers. When the contract matured, the defendant declared that he would not receive the stock bargained for, and no tender or offer of it was made to him. The complainant's damages by reason of the breach of the contract were proved to be $592 50.

He filed his bill, stating the making of the contract and its breach, and the pledge of the 100 shares of stock as security ; and praying that the same might be sold and his damages paid out of the proceeds.

The defendant in his answer, denied that the complainant had any stock of his own when he assumed to sell the 200 shares, and alleged that when the same were deliverable he had not

enough to fulfil all his contracts then due for the delivery of such stock; also that the contract was void in law and not binding upon him; that there was no tender of the stock, and that there was a sufficient remedy at law; and some other matters, which are stated in the opinion of the court.

The cause was heard on pleadings and proofs.

*D. D. Field*, for the complainant.

*A. Mann*, Jr. for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The first objection to the complainant's claim, is on the ground that the contract between the parties is not in writing subscribed by the defendant. The bill alleges that the parties entered into a contract, by which one agreed to sell to the other, 200 shares of stock upon terms which are fully stated. The answer admits the making of the contract as set forth in the bill.

On this state of the pleadings, the court has nothing to do with the question whether the contract is in writing or by parol. The Chancellor's decision in *Cozine* v. *Graham*, 2 Paige's R. 177, is conclusive that where it does not appear by the bill that the contract is not in writing, the defendant admitting the contract, must insist by plea or answer that it is not in writing, or he cannot raise that objection to its validity. And in such case no proof of the agreement is necessary.

The defendant relies upon the clause in his answer, in which he insists that " the contract is void in law and that he is not bound to perform the same."

On reading the answer I supposed this point was addressed to the allegation that the complainant did not own stock enough to fulfil his time sales, including the one in question.

Be that as it may, it is clear that it does not set up the statute of frauds so as to put the complainant upon proof of a contract in writing. The defence that an agreement, admitted to have been made, is not in writing, must be pleaded or set up in the answer *as a fact*, and distinctly put in issue. This is the essential point, and this is not pleading the law, but pleading a fact

to which the law attaches the consequence that the contract is void.

The next objection made by the defendant is that the remedy of the complainant is at law; and that he must at least establish there his right to damages, before resorting to the stock delivered to Dykers & Alstyne.

As to this, it is to be observed that the deposit of the stock constituted a pledge. (See *Cortelyou* v. *Lansing*, 2 C. C. in E. 200; *McLean* v. *Walker*, 10 Johns. 471; *Garlick* v. *James*, 12 ibid. 146.)

And it is well established that the pledgee may file a bill in equity to sell the pledge and thereby obtain payment. (4 Kent's Comm. 139, 2d ed.; 2 Story's Eq. Jur. 298, § 1033; Story on Bailments, 208, § 310; *Hart* v. *Ten Eyck*, 2 J. C. R. 62.)

I find no authority which requires the pledgee to assess his damages at law, before coming into this court. Nor can I perceive any good reason why the parties should be subjected to the expense of a suit at law for that purpose, when it can be accomplished without additional expense in the proceeding here which must ensue before the creditor can obtain payment.

In this case, although the pledge was sold by consent, the proceeds remained in the hands of the depositaries, inaccessible to the complainant through any proceeding at law. His recovery of damages for the breach of the agreement in a suit against the defendant, would not affect the pledge, nor compel Dykers & Alstyne to pay the recovery out of its proceeds.

Another objection was made, that the complainant should have proved a tender of the stock at the maturity of the contract; and farther, that he should have proved a re-sale and actual transfer of the stock at that time.

As to the tender, it appears by the defendant's letter to Dykers & Alstyne on the day the contract fell due, that he would not receive the stock, and no tender was necessary.

As to the other point, it is founded on the argument that the object of the act against stock-jobbing will be wholly defeated unless brokers selling stocks on time are required to prove a re-sale before bringing an action against the purchaser for not ac-

Vaupell v. Woodward.

cepting. For it is said, a broker with 100 shares of a particular stock, may make half a dozen or more sales of 100 shares of that stock to as many different persons on time, and on their failure to perform, might sustain a suit against them, all upon proof of his having owned the 100 shares. It may be said too, that if all the buyers should fulfil and demand their stock, his 100 shares would not go far towards completing on his part.

The English stock-jobbing act, it appears contains a provision requiring such a re-sale on these time contracts.(a)

This circumstance, while it shows the wisdom or propriety of further legislation on the subject, also shows that the evil must be remedied by legislation and not by judicial construction.

Except as regulated by our statutes, the sale of stocks stands upon the same footing as the sale of other goods and chattels. The statute contains no requisition for a re-sale, and I cannot enlarge it in order to remedy any supposed defect or omission.

The complainant is entitled to a decree for the payment of the amount of the damages as agreed upon, and the costs of this suit, out of the fund in question.

---

(a) See *Wells* v. *Porter,* 2 Bing. N. C. 722; 3 Scott, 141; and *Howitt* v. *Price,* 3 Railway and Canal Cases, 175. On the point which was argued at the bar that the contract was within the statute of frauds, (assuming it to have been by parol,) see *Duncroft* v. *Albrecht,* 12 Simons, 189, affirmed by the Chancellor, July 23, 1841; in which it was decided that railway shares in an incorporated company were not an interest in lands, nor goods or chattels, within the statute of frauds and perjuries, and that the court will enforce specifically a parol agreement for their sale.